

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 06 2015

TIM RHODES
COURT CLERK
92

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| MICHAEL STONE, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO: CJ 2015 2056 |
| CSAA INSURANCE EXCHANGE, | ) |
| ACA INSURANCE COMPANY d/b/a | ) |
| AAA FIRE AND CASUALTY INSURANCE | ) JUDGE: _____ |
| COMPANY; AAA OKLAHOMA; and | ) |
| AUTOMOBILE CLUB OF OKLAHOMA, | ) JURY TRIAL DEMANDED |
| | ) ATTORNEY LIEN CLAIMED |
| Defendants. | ) |

### PETITION

**COMES NOW**, Plaintiff, Michael Stone ("**Plaintiff**") and for his claims against Defendants, CSAA Insurance Exchange ("**CSAA Insurance**"), ACA Insurance Company d/b/a AAA Fire and Casualty Insurance Company ("**AAA Insurance**"), AAA Oklahoma ("**AAA Oklahoma**"), and Automobile Club of Oklahoma ("**Automobile Club of Oklahoma**"), for Breach of Contract, Bad Faith, Deceit and False Representation, and Breach of Fiduciary Duty states and alleges as follows:

### JURISDICTION AND VENUE

1. Plaintiff, Michael Stone, is a resident of Oklahoma County, State of Oklahoma.

2. Defendant, "CSAA Insurance" is a corporation incorporated under the laws of the State of California, but, upon information and belief, is also understood to be the parent company of Defendants "AAA Insurance," "AAA Oklahoma," and "Automobile Club of Oklahoma."

3. Defendant "AAA Insurance" is a corporation incorporated under the laws of the State of California, but licensed to sell insurance and/or adjust claims in the State of Oklahoma and to do business throughout the State of Oklahoma, including Oklahoma County.

1 | Page


EXHIBIT 1

4. Defendant "AAA Oklahoma" is specifically identified on the Declarations Page for the Policy of Insurance purchased by Plaintiff. AAA Oklahoma is also identified on the AAA Insurance website for Oklahoma customers as the entity which owns the copyright to the AAA Insurance website in Oklahoma. According to the Oklahoma Secretary of State, Defendant AAA Oklahoma is either a Domestic Not for Profit Oklahoma Corporation, or a tradename for "Automobile Club of Oklahoma," a Domestic Not For Profit Oklahoma Corporation available for service of process at 2121 E. 15th Street, Tulsa, OK 74104.

5. According to the Oklahoma Secretary of State, Defendant "Automobile Club of Oklahoma" is a Domestic Not for Profit Corporation available for service of process at 2121 E. 15th Street, Tulsa, OK 74104.

6. Based upon information and belief, Defendants CSAA Insurance, AAA Insurance, AAA Oklahoma, and Automobile Club of Oklahoma, operate and are part of a reciprocal insurance exchange, wherein they pool and partner their businesses under a regime of control such that all subsidiaries and affiliated companies can be held liable for bad faith and breach of contract.

7. On or about April 1, 2012, Plaintiff entered into a contract of insurance with Defendants AAA Insurance, AAA Oklahoma, and/or Automobile Club of Oklahoma for the purchase and provision of automobile insurance coverage, including collision coverage. The subject insurance policy was timely renewed each subsequent year, premiums were paid in full by Plaintiff, and the policy was in effect at all times relevant to the current litigation.

8. Each and every transaction(s) and/or occurrence(s) at issue in this lawsuit took place in Oklahoma County, State of Oklahoma, and, therefore, jurisdiction and venue are proper in Oklahoma County, State of Oklahoma.

## FACTUAL BACKGROUND

9. On or about February 21, 2015, Plaintiff's vehicle was parked and unattended in Oklahoma City, Oklahoma, whereupon it was struck by another vehicle(s) and/or other unknown object(s) which caused extensive property damage to the front and top of Plaintiff's vehicle. Later on the same date, Plaintiff discovered the damages, but was unable to locate any notes or witnesses who could identify the cause and/or source of the damages to his vehicle.

10. Plaintiff proceeded to timely submit a claim to Defendants for insurance coverage over the extensive property damage sustained by his vehicle.

11. Defendants confirmed that Plaintiff's vehicle had in fact sustained direct physical damage as the result of a collision with another vehicle and/or unknown object and that Plaintiff was not at fault for the damages. Defendants then advised Plaintiff that the damages were covered under the terms and conditions of Plaintiff's insurance policy with Defendants.

12. Subsequently, Defendants directed Plaintiff to one of its authorized collision repair facilities whereupon Plaintiff's vehicle was inspected in order to determine the extent of the damages and to derive an estimated cost of repairs. During the inspection, in addition to the impact damages to the front of Plaintiff's vehicle, significant dents and other damages were discovered on the top of Plaintiff's vehicle.

13. After the inspection, Plaintiff spoke with two separate agents of Defendants concerning the damages to the top of his vehicle. Both agents advised Plaintiff that since the top of the vehicle was not damaged prior to the event/circumstance which caused the damage to the front of the vehicle, that it appeared clear that the damages to the top were related to the same event/circumstance and so would be covered under the insurance policy. Both agents advised

that since it was unknown how the damages occurred in what appeared to be a hit-and-run collision, that there would be no basis to deny coverage to the top of Plaintiff's vehicle.

14. Sometime thereafter, Plaintiff was contacted by a third agent of Defendants. This third agent accused Plaintiff of causing the damage to the top of his vehicle himself and claimed that it was physically impossible for a single collision event to cause damages to both the front of a vehicle as well as to the top. Several times during their conversation, this third agent lauded his personal expertise in accident investigations, he misrepresented and falsely stated Oklahoma law to Plaintiff concerning collision coverage and proof of loss requirements, he laughed at, ridiculed, and yelled at Plaintiff, he impugned Plaintiff's integrity and honesty, and he questioned Plaintiff's intelligence. This third agent of Defendants also repeatedly referred to damages to the rear of Plaintiff's vehicle which the agent claimed as proof that Plaintiff was oblivious to the condition of his vehicle prior to the collision. It would later be revealed that the photographs upon which this third agent was basing his claims and accusations against Plaintiff were of a different vehicle having no connection to Plaintiff. In fact, this unrelated vehicle was a different make, model, and even color from Plaintiff's. After requesting that this third agent calm down and stop yelling, Plaintiff requested to speak with a supervisor.

15. Sometime thereafter, Plaintiff was contacted by a fourth agent of Defendants. This fourth agent informed Plaintiff that they were required to meet in person as part of the investigation into the damages to Plaintiff's vehicle. Plaintiff met with this fourth agent a few days later. During the meeting, this fourth agent disclosed photographs that the claims supervisor had taken during his investigation and which had been used to adjust Plaintiff's claim. It was at this time that Plaintiff discovered that several of the photographs used to adjust his claim were not his vehicle, but of some other vehicle of different make, model, and/or color.

16. Approximately a week later, Plaintiff was able to get in contact with the claims supervisor of Defendants' third agent. This claims supervisor, now the fifth agent of Defendants involved in the claim to Plaintiff's knowledge, also lauded his own personal expertise in accident investigations, misrepresented and falsely stated Oklahoma law to Plaintiff, and falsely claimed that there were no damages to the top of Plaintiff's vehicle, but only to the front and rear end. With those assertions, this supervisor claimed it was physically impossible for a single collision event to cause damage to both the front of a vehicle as well as to the rear.

17. Despite repeated attempts by Plaintiff to discuss the damage to the top of his vehicle with the claims supervisor, and advise him that he was using incorrect photographs to adjust the claim, the supervisor refused to further discuss the claim and told Plaintiff he would "just have to do what you have to do then."

18. When Plaintiff asked how the claims supervisor could make such assertions when it was unknown what had struck Plaintiff's vehicle and caused any of the damages, the claims supervisor claimed to Plaintiff that under Oklahoma law it was Plaintiff's burden of proof to show what had impacted his vehicle, and to show how the specific damages had been caused, or else the entire claim could be denied.

19. During the same conversation, this supervisor claimed that the damages to the rear of Plaintiff's vehicle would have to be considered a separate claim and that a new deductible would have to be paid to cover the damages to the rear of Plaintiff's vehicle – even though there were not any damages to the rear of Plaintiff's vehicle. When Plaintiff attempted to continue the discussion on the damages to the top of his vehicle, he was advised again that if he was not satisfied with the partial denial of coverage, then he would just have to sue, or otherwise "just have to do what you have to do then."

20.     After Plaintiff's conversation with the claims supervisor, Plaintiff contacted the first agent with whom he had originally filed his claim. Although this first agent had originally advised Plaintiff that the damages to the top of his vehicle would be covered and there was no reason to deny the claim, now this first agent advised Plaintiff that those portions of his claim would have to be denied, and that it was "illegal under Oklahoma law" to cover those portions of Plaintiff's claim. When Plaintiff advised that the claim file contained incorrect photographs and that there were no damages to the rear of his vehicle, this first agent became audibly irritated and claimed that they were human and sometimes make mistakes. When Plaintiff questioned how his claim could be adjusted and partially denied as they were claiming when it was unknown what had struck his vehicle and the claims file contained photographs of someone else's vehicle, this first agent advised Plaintiff he would "just have to do what you have to do then" and hung up.

21.     As of the filing of this lawsuit, the top of Plaintiff's vehicle remains in a damaged condition with a dented roof and a fractured roof rack which is loose, partially disconnected from the roof, partially hanging, and in a condition which may render Plaintiff's vehicle unsafe to operate for risk of coming fully detached and striking other vehicles.

## CAUSES OF ACTION

### I. BREACH OF CONTRACT

22.     Plaintiff restates, alleges, and incorporates each preceding paragraph hereof.

23.     Plaintiff was an identified insured and covered beneficiary in a contract for the purchase and provision of automobile insurance from Defendants; for which Plaintiff paid all premiums timely and in full.

24.     Pursuant to said contract, Defendant promised to provide insurance coverage proceeds for the replacement and/or repair of damaged property sustained by Plaintiff in the event of a covered loss to his automobile.

25. Nevertheless, despite the occurrence of such a loss upon Plaintiff's automobile, Defendants have denied in part the proper and full payment of such insurance coverage proceeds to Plaintiff and have therefore breached the terms of the contract without justification.

26. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer damages.

## II. BAD FAITH

27. Plaintiff restates, alleges, and incorporates each preceding paragraph hereof.

28. Defendants, as insurers operating in the State of Oklahoma, throughout all handling and adjustments of claims, maintain a duty, under Oklahoma law, to deal fairly and in good faith with their insureds, including Plaintiff.

29. Nevertheless, in handling and adjusting Plaintiff's claim, Defendants, through agents, servants, and employees thereof, acted unreasonably and in violation of the duty of good faith and fair dealing including, but not limited to, the following:

    a. In breach of its duty to adjust Plaintiff's claim in good faith and to investigate available sources of information in a timely and efficient manner, Defendants set out to collect the minimum facts necessary and engaged in an outcome-oriented investigation to support an unreasonable denial of the full amount of Plaintiff's claim and to cause additional hardship and damages to Plaintiff;

    b. Defendants failed to pay the full and fair amount for the property damage sustained by Plaintiff from the accident/occurrence on or about February 21, 2015;

    c. Defendants have delayed and denied paying Plaintiff the full amount of policy proceeds owed for the purpose of coercing Plaintiff to accept a settlement of his claim less than the proper amount and with a waiver of rights to other entitled proceeds;

      **d.**    While adjusting Plaintiff's claim, Defendants engaged in unreasonable conduct meant to intimidate, embarrass, and harass Plaintiff for purposes of coercing Plaintiff into early and partial settlement;

      **e.**    Defendants knowingly and maliciously misrepresented to Plaintiff certain provisions of Oklahoma law and knowingly used incorrect materials and data unrelated to Plaintiff's claim in order to improperly adjust and then deny part of Plaintiff's claim; and

      **f.**    Defendants, having no legal justification, have compelled Plaintiff to file this Petition in order to obtain the insurance proceeds to which he was entitled and to avoid further inappropriate conduct and derision from agents of Defendants.

**30.**    Defendants' obligations arise from both the express written terms of the policy and the Oklahoma Insurance Code. Defendants' failure to implement and/or follow Oklahoma's statutory Insurance Code constitutes bad faith.

**31.**    The conduct of Defendants was intentional, willful, malicious, and in reckless disregard of the rights of Plaintiff, and has been sufficiently egregious in nature so as to warrant the imposition of punitive and/or exemplary damages.

**32.**    As a direct and proximate result of the conduct of Defendants, and the breach by same of the duty to deal fairly and in good faith with its insureds, Plaintiff has suffered and continues to suffer damages.

### III. DECEIT & FALSE REPRESENTATION

**33.**    Plaintiff restates, alleges, and incorporates each preceding paragraph hereof.

**34.**    Throughout the handling and adjusting of Plaintiff's claim, Defendants made use of several agents/employees to engage in deceitful practices and false representation toward Plaintiff including, but not necessarily limited to, falsely referring to damages that did not exist to Plaintiff's vehicle, denying damages that did exist to Plaintiff's vehicle, falsely claiming to

cite Oklahoma law with regard proof of loss requirements and restrictions, burdens of proof, and other purported legal requirements for full policy coverage which do not exist, and engaging in derisive and shaming tactics in order to coerce early and partial resolution of Plaintiff's claim.

35. The conduct of Defendants was intentional, willful, malicious, and in reckless disregard of the rights of Plaintiff, and is sufficiently egregious in nature so as to warrant the imposition of punitive and/or exemplary damages.

36. As a direct and proximate result of the conduct of Defendants and/or agents or employees thereof, Plaintiff has suffered and continues to suffer damages.

## IV. BREACH OF FIDUCIARY DUTY

37. Plaintiff restates, alleges, and incorporates each preceding paragraph hereof.

38. A special relationship akin to that of a fiduciary duty existed between Defendants and Plaintiff stemming from the quasi-public nature of insurance, the unequal bargaining power of Defendants over Plaintiff, and the potential for Defendants to unscrupulously exert that power at a time when Plaintiff is most vulnerable. As a result of this special relationship, Defendants owed a fiduciary duty to Plaintiff to act in a manner consistent with the interests of its insured.

39. Defendants breached their fiduciary duty owed to Plaintiff.

40. The conduct of Defendants was intentional, willful, malicious, and in reckless disregard of the rights of Plaintiff, and is sufficiently egregious in nature so as to warrant the imposition of punitive and/or exemplary damages.

41. As a direct and proximate result of Defendants' breach of its fiduciary duty to Plaintiff, its insured, Plaintiff has suffered and continues to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff respectfully prays for judgment in his favor and against Defendants for damages in an amount in excess of $75,000.00, including compensation and/or damages for the following:

I)   All contractual benefits for all coverages afforded to Plaintiff under the subject automobile insurance policy with interest on all amounts due;

II)  Compensatory damages for derision, ridicule, embarrassment, emotional distress, loss of peace of mind, frustration, and mental pain and suffering;

III) Lost income, expenses incurred, and other financial losses;

IV)  Reasonable attorney fees, pre-judgment and post-judgment interest at the statutory rate;

V)   Actual, punitive, and exemplary damages; and

VI)  Any and all other relief which this Court deems equitable, just, and proper.

Respectfully submitted,

_____
Michael C. Stone II, OBA #21834
STONE LAW FIRM
1800 Canyon Park Circle, Suite 304
Edmond, OK 73013
Tel: (405) 627-4381 / Fax: (405) 844-5213
Email: michael@mcstonelaw.com
*Attorney for Plaintiff*